James David DUBIN, on behalf of himself and all persons similarly situated, Plaintiffs,

v.

The E.F. HUTTON GROUP, INC., E.F. Hutton & Company, Inc., Defendants.

No. 88 Civ. 0876 (PKL).

United States District Court, S.D. New York.

Feb. 7, 1995.

ren, New York City (William R. Golden, Jr., Gregory A. Calim, of counsel), for plaintiffs.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City (Anne C. Vladeck, Laura S. Schnell, Carrie H. Cohen, of counsel), for Harris Class.

Christopher Lovell, P.C., New York City (Christopher Lovell, of counsel), for Kaplan Class.

### *AMENDED OPINION AND ORDER*

LEISURE, District Judge:

This is an appeal by the plaintiff class, its lead counsel, Roger W. Mehle, Esq. ("Mehle"), and Mehle's co-counsel, Kelley Drye & Warren ("Kelley Drye") from an Opinion and Order of Magistrate Judge Kathleen A. Roberts, dated March 4, 1994 (the "Order"). The parties had previously consented to present their case before Magistrate Judge Roberts. The Order made a determination regarding the application for attorneys' fees by Mehle and Kelley Drye, and by intervenors Vladeck, Waldman, Elias & Engelhard, P.C. ("Vladeck") and Christopher Lovell, P.C. ("Lovell"), counsel in two other class actions. For the reasons stated below, Mehle's and Kelley Drye's appeal is granted in part and denied in part, and the Order is modified.

### BACKGROUND

This action was commenced on February 8, 1988, as an individual action by named plaintiff James David Dubin ("Dubin") against the E.F. Hutton Group Inc. and its wholly owned subsidiary E.F. Hutton & Company Inc. (collectively "Hutton"). On September 19, 1988, Dubin's complaint was amended to restate one of his claims, arising under section 12(1) of the Securities Act, as a class action claim (together with the four individual claims, the "*Dubin* action"). The Court certified the class by its Opinion and Order, dated July 19, 1990. In order to prepare for trial, on April 26, 1992, plaintiffs retained Kelley Drye to assist Mehle.

On May 8, 1992, Judge Vincent L. Broderick referred to Magistrate Judge Kathleen A. Roberts for settlement of the *Dubin* action

Roger W. Mehle, Washington, DC (Roger W. Mehle, of counsel), Kelley Drye & War-

along with two other class actions pending against Hutton, *Harris v. The E.F. Hutton Group Inc.*, No. 88 Civ. 0172 (VLB) (S.D.N.Y. filed Jan. 11, 1988) (*"Harris"*) and *Kaplan v. The E.F. Hutton Group Inc.*, N.C.A. 88–00889 (N.Y.Sup.Ct. filed Dec. 27, 1987) (*"Kaplan"*).

On June 15, 1993, the parties to the *Dubin* action executed definitive settlement agreements settling the class claim for the amount of $4,128,674.50 and the four individual claims for the amount of $21,325.50. Order at 17. On June 29, 1993, with the consent of the parties and by order of the Court, the case was assigned to Magistrate Judge Roberts for the conduct of all further proceedings to effectuate the settlement. On or about July 1, 1993, Mehle sent *Dubin* class members a notice advising them of the pendency and terms of the proposed settlement and informing them that lead counsel, Mehle, and co-counsel, Kelley Drye, sought attorneys' fees of $979,912.50 and $401,005.05 respectively, plus reimbursement of Dubin's expenses not to exceed $90,000.[1]

On July 23, 1993, Vladeck, counsel for *Harris,* and Lovell, counsel for *Kaplan,* indicated an intention to seek a fee from the Dubin settlement fund. They sought $250,-000 and "at least $84,828.56," respectively. The fee applications by *Harris* and *Kaplan* class counsel arose as a result of the certification of overlapping classes in the three actions.[2] On September 8 and 9, 1993, Judge Roberts conducted a fairness hearing, and on September 15, 1993, Judge Roberts approved the settlement as proposed, but reserved decision as to attorneys' fees and reimbursement of expenses.

In the Order, Judge Roberts awarded reduced fees and expense reimbursements to Mehle and Kelley Drye and awarded Vladeck and Lovell the full amount of the fees they requested.

▮▮▮ Mehle and Kelley Drye appeal that award. This Court has jurisdiction to hear this appeal under 28 U.S.C. § 636(c)(4) and Fed.R.Civ.P. 73(d), which provide for an optional appeal to the District Court, rather than the Court of Appeals, from a final order of a Magistrate Judge rendered under 28 U.S.C. § 636(c)(1). The standard of review on appeal for facts determined by the Magistrate Judge is the "clearly erroneous" standard. *See* Fed.R.Civ.P. 52(a); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The standard of review on appeal where the matter for decision entailed the exercise of discretion by the Magistrate Judge is the "abuse of discretion" standard. *See Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 166 (3d Cir.1973). The Magistrate Judge's legal determinations are reviewable without limitation. *See Clark v. John Lamula Investors, Inc.*, 583 F.2d 594, 603 (2d Cir.1978).

## DISCUSSION

### A. *Notice to Dubin Class*

▮▮▮ The first issue that this Court must consider is whether *Kaplan* counsel and *Harris* counsel forfeited their claim to any fees in the *Dubin* action when they failed to provide notice to *Dubin* class members concerning their fee applications. It is undisputed that

---

**1.** The general "American Rule" is that the prevailing party in federal court litigation is not entitled to recover legal fees incurred in the conduct of that litigation. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). "The 'common fund' principle is an exception that permits a litigant whose efforts created a common fund to recoup its expenses to the extent that those expenses benefited the fund." *See United States v. 110–118 Riverside Tenants Corp.*, 5 F.3d 645, 646 (2d Cir.1993). "The common-fund exception, however, is limited. Expenses incurred by the litigant in the effort to recover its fund-benefiting expenses, or to establish its own

priority to the fund, must be borne by that litigant." *Id.*

**2.** There is substantial overlap in class membership between the *Dubin* and *Harris* classes and between the *Dubin* and *Kaplan* classes. Order at 7. The parties, in fact, are in substantial disagreement about the number of shares held by plaintiffs who are members of both the *Dubin* and the *Harris* or *Kaplan* class ("overlapping shares"). Order at 14. Defendants' insistence throughout the evolution of the settlement negotiations, however, that they not pay twice for the overlapping shares never faltered in either its clarity or its constancy.

both Vladeck and Lovell received copies of the proposed *Dubin* settlement notice before it was approved for circulation to the class by Judge Roberts. It is further undisputed that no request was made by Vladeck or Lovell to modify the settlement notice to disclose to the class their planned fee requests. Mehle contends that this failure placed Vladeck and Lovell in violation of S.D.N.Y. Civil Rule 5, which directs:

> Rule 5. Fees in Stockholder and Class Actions
>
> Fees for attorneys or others shall not be paid upon recovery or compromise in a ... class action ... except as allowed by the court after a hearing upon such notice as the court may direct. The notice shall include a statement of the names and addresses of the applicants for such fees and the amounts requested respectively and shall disclose any fee sharing agreements with anyone.... Where the court directs notice of a hearing upon a proposed ... settlement of a ... class action, the above information as to the applications shall be included in the notice.

S.D.N.Y.Civ.R. 5.

Judge Roberts dismissed as unimportant Vladeck's and Lovell's failure to provide notice because they sought only a portion of the fee requested by *Dubin* counsel. Mehle contends that any award to Vladeck and Lovell would deprive the *Dubin* class of the benefit of any reduction in *Dubin* counsel's fees. In other words, Mehle argues that it is not simply a matter of reducing *Dubin* counsel's fees to compensate *Harris* and *Kaplan* counsel, thereby leaving Dubin class members unaffected. Rather, Mehle contends that if *Dubin* counsel truly deserve reduced fees, the deduction should accrue to the benefit of *Dubin* class members. In addition, Mehle maintains that although *Dubin* class members may have approved paying *Dubin* counsel up to $1,380,917.55, it is not clear that they would have accepted disbursing the identical sum had they been informed that part of the disbursement would be distributed to *Harris* and *Kaplan* counsel. Therefore, concludes Mehle, it is not permissible merely to pay *Harris* counsel and *Kaplan* counsel from the monies already allocated for attorneys' fees because doing so violates both Civil Rule 5 and the due process requirements of Fed.R.Civ.P. 23.

The instant case presents the Court with an unusual situation. Vladeck and Lovell have not conformed with the technical rules of Rule 5 notification, but as will later be discussed, they are, in fact, entitled to the payment awarded to them. This Court notes that it is important that courts avoid awarding windfall fees and that they should avoid any appearance of having done so. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469–70 (2d Cir.1974). Fee awards, under the equitable fund doctrine, are proper "only if made with moderation and a jealous regard to the rights of those who are interested in the fund.... [T]he court should typically take pains to allow a complete airing of all objection to a petitioner's fee claim." *Id.* (citations and quotations omitted).

It is important to remember, however, that the paramount consideration in awarding attorneys' fees in class actions is the protection of the interests of the class members and the achievement of equity. "In a class action settlement, the normal focus is on the fairness, reasonableness and adequacy of the settlement to the plaintiff class." *In re Masters Mates & Pilots Pension Plan*, 957 F.2d 1020, 1025 (2d Cir.1992). *See also Foe v. Cuomo*, 892 F.2d 196, 198 (2d Cir.1989) (ultimate question is whether the settlement is fair and reasonable under the circumstances of the case). Local Civil Rule 5 has been interpreted flexibly and compliance therewith has been waived where the court is able to determine that the requested fee is clearly fair. *See In re Baldwin–United Corp.*, 105 F.R.D. 475, 485 (S.D.N.Y.1984); *Plaskow v. Peabody International Corp.*, 95 F.R.D. 297, 299 (S.D.N.Y.1982); *Koster v. Perales*, 1989 WL 79482 (E.D.N.Y.). *Cf. In re Drexel Burnham Lambert Group*, 995 F.2d 1138, 1144 (2d Cir.1993) ("[n]o rigid constitutionally mandated standard governs the contents of notice in a case like the one before us. Rather, the Due Process Clause requires the best notice practical under the circumstances ... and the Supreme Court has warned against interpreting this notice requirement so inflexibly as to make it an impractical or im-

possible obstacle" (citations and quotations omitted)).

This Court finds, for the reasons stated below, that the disbursement of attorneys' fees to *Harris* and *Kaplan* class counsel was fair. This Court further finds that, in the circumstances of the instant action, it was sufficient that *Dubin* class members received notice of the total sum of attorneys' fees requested, and that it was not necessary for the allocation of those fees to be made explicit. In the circumstances of the instant action, this notice was sufficient to conform with the due process requirements of Fed. R.Civ.P. 23.[3]

The interests of *Dubin* class members were not adversely impacted by the just allocation of attorneys' fees among the different groups of attorneys who benefited the *Dubin* class. It would be perverse to strictly construe the terms of Local Civil Rule 5 in such a manner as to require the redistribution of justly apportioned attorneys' fees in an inequitable direction. As a consequence, this Court finds that the award of fees to *Harris* and *Kaplan* counsel was not an abuse of discretion by Judge Roberts, nor did it constitute an action contrary to law. This Court will not upset an equitable award of fees based upon a failure to perfect total compliance with Local Civil Rule 5.[4]

### B. *Fees Awarded to Harris and Kaplan Counsel*

#### 1. *Percentage of Recovery and Time Records*

Mehle contends that counsel for *Harris* and *Kaplan*, in their fee applications to Judge Roberts, did not document the time that they spent in conducting their activities that allegedly benefited *Dubin* class members. Mehle maintains that it is impermissi-

ble to completely disregard the requirement that time records be submitted in support of an equitable fund fee application.

#### a. *The Standard*

A decision to award attorneys' fees should not be "reversed absent an abuse of [judicial] discretion." *Milwe v. Cavuoto,* 653 F.2d 80, 82 (2d Cir.1981); *see also Cabrera v. Jakabovitz,* 24 F.3d 372 (2d Cir.1994). Deference is particularly appropriate in the context of reviewing a determination on a fee application because:

> an appellate court is not well situated to assess the course of litigation and the quality of counsel. The [trier of fact], by contrast, closely monitors the litigation on a day-to-day basis. The Supreme Court long ago observed that a trial judge has far better means of knowing what is just and reasonable than an appellate court can have. Accordingly we think it is better to have [the] discretion [to award fees] exercised by the court which has been most intimately connected with [the] case.

*Copeland v. Marshall,* 641 F.2d 880, 901 (D.C.Cir.1980) (citations and quotations omitted). "[G]reat weight [will] be accorded the views of the trial judge because exposure to the litigants and their strategies makes [her] uniquely aware of the strengths and weaknesses of the case and the risks of continued litigation. [The court should] not overturn a [trial] court's approval of a settlement absent a clear showing of an abuse of discretion." *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1323 (2d Cir.1990) (quotations and citations omitted). *Cf. Grant v. Bethlehem Steel Corporation,* 823 F.2d 20, 22 (2d Cir.1987) ("[a]ppellants contend primarily that the district court abused its discretion in approving the settlement despite the objec-

---

3. The Court notes that twenty-seven of the thirty-three members of the *Dubin* class had overlapping shares, and all were aware of total attorneys' fees requested.

4. The Court notes that there is some question as to whether Mehle should be permitted to make an argument based on Rule 5 notice. It is undisputed that Mehle and co-counsel, Kelley Drye, controlled the notice that was sent to *Dubin* class members. Judge Roberts implies that Mehle

knew or should have known that *Harris* and *Kaplan* counsel would seek payment from the *Dubin* settlement. *See* Order at 18–19. Yet, it appears, that the notice sent to the *Dubin* class members by Mehle was different from the notice approved by Judge Roberts. In particular, the notice approved by Judge Roberts did not specify that the entire fee would be paid to Mehle and Kelley Drye. Rather, it merely stated that attorneys' fees would not exceed $1.4 million.

tions of all responding class members. We disagree.")

b. *Percentage of Recovery*

▮ Vladeck and Lovell argue that Judge Roberts' decision to use the "percentage-of-recovery" method rather than the "lodestar" method of determining their fees was within her discretion because the method of determining the adequacy of attorneys' fees in common fund class actions varies within the Southern District of New York. *See* Order at 24–26.[5] This Court observes that in a footnote in *Blum v. Stenson*, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984), the Supreme Court indicated that the calculation of fees under the common fund doctrine "is based on a percentage of the fund bestowed on the class." In addition, in 1985, a Third Circuit task force on attorneys' fees recommended the percentage method in common fund cases. Report of the Third Circuit Task Force, "Court Awarded Attorney Fees," 108 F.R.D. 237, 255–56 (1985). An important reason for using the lodestar method in fee-shifting cases does not apply in common fund cases. *See* Alan Hirsch and Diane Sheehy, *Awarding Attorneys' Fees and Managing Fee Litigation* (Federal Judicial Center 1994) at 65. Statutory fee shifting is designed to ensure the procurement of competent counsel for certain kinds of cases, and requiring the defendants to pay plaintiff's counsel at the market rate serves this function. *See id.* In the common fund situation, however, the goal is to prevent unjust enrichment. *See id.* This is not necessarily achieved by the lodestar, which focuses on the extent of counsel's work rather than on its effect on the beneficiaries. *See id.* The percentage method offers the advantage of helping to ensure both that the fee award will stimulate the market and that attorneys will have an incentive to settle the case rather than to litigate it fully in order to increase the lodestar. *See id.*

Although the Second Circuit has chosen the lodestar method in common fund cases in the past, *see In re "Agent Orange" Prod. Liability Litig.*, 818 F.2d 226, 232 (2d Cir. 1987); *Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir.1977) ("Grinnell II"); *Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir.1974) ("Grinnell I"), the current status of this method is unclear. The technique used to determine the adequacy of attorneys' fees in common fund class actions presently varies within the Southern District of New York. Some judges prefer the lodestar method while others find the percentage-of-recovery method to be superior. *See* Order at 24–26. This Court finds that Judge Roberts did not abuse her discretion in selecting the percentage-of-recovery method in the instant case.

c. *Time Records*

▮ Vladeck and Lovell also contend that Judge Roberts did not abuse her discretion by not requiring the submission of detailed time records in conjunction with her utilization of the percentage-of-recovery method. The Second Circuit, however, has explicitly required a review of contemporaneous time records in determining attorneys' fees. *See New York State Association for Retarded Children, Inc v. Carey*, 711 F.2d 1136, 1154 (2d Cir.1983) (requiring "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done"); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("[t]he most use-

5. *See also In re Union Carbide Corp. Consumer Products Business Sec. Litigation*, 724 F.Supp. 160, 168 (S.D.N.Y.1989) (Brieant, J.) (noting that a Third Circuit task force had concluded "in class action common fund cases the better practice is to set a percentage fee"); *Chatelain v. Prudential–Bache Securities, Inc.*, 805 F.Supp. 209, 215 (S.D.N.Y.1992) (Lowe, J.) ("[t]his Court declines to apply the lodestar method, and instead favors the use of the straight percentage of recovery method"); *Bragger v. Trinity Capital Enterprises Corp.*, 1993 WL 287626 (S.D.N.Y. 1993) (McKenna, J.) ("[t]he percentage—as opposed to the lodestar—method of determining fees in class actions is increasingly accepted as preferable in the federal courts in general, and in this District in particular"); and *In re RJR Nabisco, Inc. Securities Litigation*, 1992 WL 210138 (S.D.N.Y.1992) (Mukasey, J.) ("the award of a percentage fee in common fund cases such as this is consistent with the better and increasingly prevailing view in such cases ... [w]here counsel have helped create a fund to be shared by numerous plaintiffs, courts have tended increasingly to award fees based on a percentage of the fund rather than on a lodestar calculation of time multiplied by an hourly rate").

ful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"); *Grinnell II* at 1099 ("district courts should place primary reliance on the value of the time actually expended by fee applicants as determined by normal billing rates"); *Grinnell I* at 470 ("[t]he starting point of every fee award ... must be a calculation of the attorney's services in terms of the time he has expended on the case"). Such a review is required regardless of which method for evaluating appropriate attorneys' fees is employed.

■ This Court finds that although time records are a very important factor in determining appropriate attorneys' fees, the failure of Judge Roberts to require their specific submission by Vladeck and Lovell in the *Dubin* action, does not constitute an abuse of discretion nor an action contrary to law. First, the Court notes that Judge Roberts had *Harris* counsel's complete contemporaneous time records before her as part of *Harris* counsel's submissions for an award of attorneys' fees from the *Harris* fund. *See* Memorandum of Law in Opposition to *Dubin* Counsel's Appeal from the Order of the Magistrate Judge Granting Attorneys' Fees to *Harris* and *Kaplan* Class Counsel ("*Harris* Mem.") at 25. *Harris* counsel's fee application was examined and approved as reasonable by the Court on December 29, 1993. *Id.* These records were ample to provide Judge Roberts with the information she needed to accurately assess *Harris* counsel's claims for fees.

Second, summary records of time and expenses were submitted by *Kaplan* class counsel. Memorandum of Law in Opposition to *Dubin* Counsel's Appeal from the Award of Attorneys' Fees to *Kaplan* and *Harris* Class Counsel ("*Kaplan* Mem.") at 24. Third, it is unlikely that the time records could have provided or did provide great aid in determining the equitable assignment of

attorneys' fees, in the specific circumstances of the instant case. This is true because *Harris* and *Kaplan* counsel would not have, nor could they have, maintained accurate time records reflecting which of their actions also benefitted the *Dubin* class. Ultimately, this was a matter for the Court to decide, and Judge Roberts did not abuse her discretion in so deciding.[6] *Cf. Voege v. Ackerman,* 70 F.R.D. 693, 695 (S.D.N.Y.1976) (Weinfeld, J.) ("[w]hile time is a factor ... it is, as this court has observed, of only relative importance. The court is of the view that of substantial significance is the value of the benefit actually received by those on whose behalf the action was allegedly instituted"). Fourth, this Court, finds that the fees awarded *Harris* and *Kaplan* counsel were, in fact, equitable. It must be remembered that the "key consideration in determining whether an award is justified is the value to the class of the legal work performed for its benefit." *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1327 (2d Cir.1990). This Court finds that Judge Roberts accurately determined the value to the *Dubin* class of the legal work performed by Vladeck and Lovell, and consequently, the awards granted to them are justified.

In sum, this court finds that (1) Judge Roberts did not abuse her discretion in applying the "percentage-of-recovery" method of determining attorneys' fees, and (2) Judge Roberts did not abuse her discretion by not requiring the submission of detailed time records in the *Dubin* action, given the unusual circumstances of the case and the accomplishment of the ultimate goal of achieving equity.

### 2. Benefits Conferred

■ This Court, having determined that Judge Roberts acted within the boundaries of her discretion by using a percentage-of-recovery method and by not mandating that detailed time records be submitted, must

---

**6.** If *Harris* and *Kaplan* counsel had submitted painstakingly precise time records, fastidious in their detail and unerringly delineated as to every minutiae and nuance, this Court would still have this matter before it, because the real issue is whether Judge Roberts properly valued the benefit, if any, that *Harris* and *Kaplan* counsel con-

ferred on the *Dubin* class. Judge Roberts had access to all relevant information, and she used that information, as she viewed necessary, to achieve an equitable apportionment. This Court must decide whether she succeeded, and it determines that she has.

now resolve whether Judge Roberts erred in finding that the *Harris* and *Kaplan* attorneys conferred benefits on the Dubin class. In order for Vladeck and Lovell to collect fees in the *Dubin* class action, they must have conferred a benefit on that class. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975). Judge Roberts' conclusion that counsel for *Harris* and *Kaplan* did confer a benefit on the Dubin class is a factual question that is subject to review under the "clearly erroneous" standard.[7]

■ In the Order, Judge Roberts identified three types of activities by Vladeck and Lovell that conferred a benefit on *Dubin* class members individually and on the class as a whole. First, Judge Roberts grounded her award of fees to Vladeck and Lovell on the fact that they conferred a benefit on the overlapping plaintiffs.[8] Benefit was found to . be conferred due to the prior membership of these persons in the *Harris* or *Kaplan* classes before the *Dubin* class was certified, and the corresponding receipt of legal services as *Harris* or *Kaplan* class members. Second, Judge Roberts found that a benefit was conferred on *Dubin* class members by a mock jury trial held in the *Harris* action.[9] Judge Roberts found that the successful prosecution of the mini-trial "contributed significantly to the Dubin Settlement." Order at 50.[10] Third, Judge Roberts concluded that *Harris* counsel's and *Kaplan* counsel's earlier unsuccessful settlement negotiations with Hutton were responsible for *Dubin* counsel's subsequent successful negotiations with Hutton. Judge Roberts found that Vladeck and Lovell "contributed significantly to the Dubin

settlement by the efforts that resulted in earlier settlement offers." Transcript of Fairness Hearing before Magistrate Judge Kathleen Roberts on September 8 and 9, 1993 ("Tr.") at 50.

Mehle contends that all three of the bases for Judge Roberts finding that benefit was conferred on the *Dubin* class by counsel for *Harris* and *Kaplan* are clearly erroneous. This Court need not conduct an exhaustive review of the exact benefit conferred on the *Dubin* class by each of the three types of activities cited by Judge Roberts because it finds that Judge Roberts' conclusion, that benefit was conferred, is not clearly erroneous. Accordingly, this Court will not overturn Judge Roberts' award of attorneys' fees to Vladeck and Lovell based on Mehle's contention that they conveyed no benefits to the *Dubin* class.

C. *Fees Awarded to Mehle*

Mehle next contends that Judge Roberts abused her discretion by arbitrarily reducing Mehle's lodestar multiplier from 1.5 to 1.25, by reducing his lodestar amount, and by not applying even the reduced multiplier to some of his charges. As Mehle acknowledges, the award of a lodestar multiplier is ordinarily an unreviewable exercise of discretion by the trial court judge. Mehle, however, argues that the instant case is exceptional and that this Court should find Judge Roberts' reduction of the lodestar and the lodestar multiplier requested by Mehle to be an abuse of discretion. This Court does not so find. This Court, instead, finds Judge Roberts' decision to apply a 1.25 multiplier to be within her discretion as the one with the most

---

7. Co-counsel for Dubin do not contest the authority of the Court to award fees on the basis of counsel having conferred a benefit upon the class, but rather dispute the Court's finding that such a benefit was indeed conferred upon the *Dubin* class by *Harris* and *Kaplan* counsel. It is thus not the Court's legal basis but the factual predicate for the decision that *Dubin* co-counsel challenge. Consequently, this Court's review is governed by the clearly erroneous standard.

8. This refers to the 27 persons, of the 33 who comprise the *Dubin* class, who met the class definition of *Dubin* and of either *Harris* or *Kaplan*.

9. In March 1992, the *Harris* action was remitted to a non-binding six-person "mini-trial" as a method of encouraging settlement. The mini-trial jury found that Hutton was liable on the *Harris* claim.

10. Judge Roberts found that the mini-trial "catapulted" settlement discussions to a new level. *See* Order at 50. Mehle contends that it was, in fact, the imminent trial date and not the results of the mini-trial that pushed Hutton to a more serious settlement effort, but this Court does not find that Judge Roberts' finding of fact concerning the impact of the mini-trial was clearly erroneous.

intimate knowledge of both the risks involved in the instant action and the quality of the representation provided by *Dubin* counsel.

■ Mehle then argues that Judge Roberts erred in denying *Dubin* class counsel a lodestar multiplier for the period of time that he litigated the *Dubin* class action before it was pleaded as such. Judge Roberts provided no reasoning for this denial, but simply stated that she found "no basis for a multiplier on fees incurred prior to the filing of the class complaint." Order at 34. The preeminent reason for the application of a multiplier is recompense for counsel's risk of litigation. *See In re Union Carbide,* 724 F.Supp. at 164. Judge Roberts found that Mehle deserved some consideration for the risks and uncertainties involved in the instant action, and that the instant action was worthy of judicial encouragement. *See* Order at 34. This Court sees no reason why the appropriate multiplier should not have been applied equally to fees incurred before and after the filing of the class complaint. If anything, the risks involved were greater prior to class certification. Accordingly, this Court finds that Judge Roberts should have applied the 1.25 multiplier to the fees incurred prior to the filing of the class complaint.

■ Mehle asserts that Judge Roberts abused her discretion in reducing *Dubin* counsel's lodestar amount for time spent on Dubin's individual claims. Judge Roberts noted that Mehle failed separately to record the time he spent on Dubin's individual claims. Mehle argues that Dubin's individual claims were inextricably intertwined with the class claims and that the time spent on the

individual claims also benefited the class. Judge Roberts, however, highlights several instances where *Dubin* counsel performed activities that promoted only the interests of *Dubin* individually. *See* Order at 31–33. This Court notes that while an attorney may recover fees for work performed on a plaintiff's individual claims if that work benefitted the class, the burden is on class counsel to identify in the fee application how much time was spent on individual as opposed to class claims. Mehle has failed to meet that burden. This Court concludes that Judge Roberts' consequent reduction of Mehle's lodestar amount to take into account the time spent solely to advantage Dubin individually was not an abuse of discretion.

■ Lastly, Mehle contends that he is entitled to compensation for opposing the *Harris* and *Kaplan* attorneys' fee applications before Judge Roberts. This Court finds that Mehle and Kelley Drye had an ethical duty to represent the interests of their clients. If they believed that Vladeck and Lovell were being awarded fees that should have accrued to the benefit of the *Dubin* class, then Mehle and Kelley Drye were obligated to resist those fee applications. Had they been successful, the *Dubin* class would have obtained over $300,000.[11] Accordingly, this Court finds that Mehle was entitled to the $17,500 in time charges that were incurred in opposing Vladeck's and Lovell's fee applications.

### D. Fees Awarded to Kelley Drye

■ Kelley Drye contends that Judge Roberts applied an improper legal test in

---

11. As this Court noted earlier, it was reasonable for Mehle to have believed that the amount by which Judge Roberts reduced his fees should have been distributed to the *Dubin* class. *See* Section A. This Court observes that neither Mehle nor Kelley Drye contend that they are entitled to compensation for opposing the award of fees to Lovell and Vladeck, if that appeal is unsuccessful. They reason that they should not be paid if their actions do not confer a benefit. This Court, however, will not take a narrow view of what it means to confer benefit. The Court finds that the ultimate failure of the resistance mounted by Mehle and Kelley Drye does not result in their being precluded from recovering fees for taking the stance that they took. Although the opposition raised against the award of fees was a skirmish that was lost, it was part

of a larger battle that resulted in a sizable gain to the *Dubin* class. It is the overall benefit to the *Dubin* class to which this Court looks in deciding whether Mehle and Kelley Drye merit fees for their representation. The Court will not deduct from class counsel's fees the amount spent on individual gambits and strategies that did not result in a net gain for the class.

Finally, the Court emphasizes that its award of fees to Mehle and Kelley Drye results from their attempt to reclaim for the class the money that they believed was inappropriately awarded to the intervenors. Mehle and Kelley Drye receive no fees, nor do they ask for any fees, stemming from the time and costs associated with their request for the restoration of the amounts deducted by Judge Roberts from their own fees.

denying it recovery of attorneys' fees for hours worked. For the reasons stated above, this Court finds that Judge Roberts did not abuse her discretion in denying the multiplier sought by Kelley Drye. Also for the reasons stated above, Judge Roberts did err in failing to permit Kelley Drye to recover fees for opposing the fee applications of Vladeck and Lovell. Accordingly, this Court finds that Kelley Drye was entitled to the $12,400 in time charges that were incurred in opposing Vladeck's and Lovell's fee applications.

Kelley Drye further asserts that Judge Roberts abused her discretion in reducing Kelley Drye's fees below its lodestar figure based on deficiencies in its fee application. Kelley Drye observes that there is a strong presumption that the lodestar figure represents the reasonable fee in common fund cases. *See Grant v. Martinez*, 973 F.2d 96 (2d Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993). Kelley Drye argues that the plain purpose of the downward departure from the lodestar was to make room in the attorneys' fee fund for Vladeck's and Lovell's fee request, and that this was a clear abuse of discretion.

This Court is troubled by the items that Judge Roberts lists as deficiencies in Kelley Drye's fee application.[12] For example, Judge Roberts indicates that she was distressed by the fact that Kelley Drye sought fees for services performed over a 14–month period that total more than 40% of Mehle's fees for more than five years of work. Yet, Kelley Drye is a large firm which supplied a team of lawyers and which was retained specifically because its expertise was needed to meet the demands of preparing for an imminent trial. This Court also notes that most of the deficiencies highlighted by Judge Roberts could

have been easily cured if some notice had been provided to Kelley Drye about additional required submissions. This Court also finds that Judge Roberts committed reversible error in deducting from Kelley Drye's fees an arbitrary amount that purportedly accrued to the sole benefit of Dubin as an individual.[13] While Judge Roberts acted within her discretion in reducing the amount awarded to Kelley Drye, the amount deducted was too large. Accordingly, this Court finds that Kelley Drye's lodestar should have been reduced by 5% rather than the 25% subtracted by Judge Roberts.

### E. Redistribution of Fees

For the reasons stated above, Mehle is entitled to the additional amount that results from an application of the 1.25 multiplier to his pre-class complaint fees of $77,456.25. This equals $96,820.31, which is an additional $19,364.06. To this amount must be added the $17,500 in time charges that Mehle incurred in opposing Vladeck's and Lovell's fee applications. In sum, Mehle is entitled to the additional amount of $36,864.06.

Also for the reasons stated above, Kelley Drye is entitled to a 5% reduction of its lodestar rather than the 25% reduction employed by Judge Roberts. As a consequence, Kelley Drye should have received $253,969.86 rather than $200,502.52, or an increase of $53,467.34. Furthermore, Kelley Drye is equally entitled to the $12,400 in time charges that it incurred in opposing Vladeck's and Lovell's fee applications. In sum, Kelley Drye is entitled to the additional amount of $65,867.34.

Although the fees awarded to Kelley Drye and to Mehle have been increased, total attorneys' fees for pre-settlement activities do not exceed the $1,380,917.55 noticed to the

---

**12.** The listing of these items as deficiencies is particularly disturbing given the leeway afforded to Vladeck and Lovell in presenting their fee application. For example, Kelley Drye is criticized for failing to specify which attorney performed which activity and for neglecting to provide information regarding the qualifications and experience of the Kelley Drye attorneys who worked on the instant action, yet it was found unnecessary for Vladeck and Lovell to submit such detailed time sheets in the *Dubin* action.

**13.** Judge Roberts speculates that Kelley Drye attorneys must have spent at least a modest amount of time familiarizing themselves with Dubin's individual claims. Order at 32. Kelley Drye does not contest that time was spent on exactly that activity. Rather, it maintains that such time simply was not billed. *See* Memorandum of Law Submitted by Kelley Drye & Warren on Appeal from the Order of the Magistrate Judge Determining Counsel Fee Applications ("Kelley Drye mem.") at 16.

*Dubin* class. Specifically, Mehle is entitled to $764,373.43 for pre-settlement activities; Kelley Drye is entitled to $253,969.86 for pre-settlement activities; Vladeck is entitled to $250,000; and Lovell is entitled to $85,000. This equals a total of $1,353,343.29 in attorneys' fees, and this sum is $27,574.26 less than was noticed to the class.[14] Thus, the final allocation of fees and expenses is as follows—Dubin: $87,562.41; Mehle: $787,910.05; Kelley Drye: $283,534.08; Vladeck: $250,000.00; and Lovell: $85,000.00.

## CONCLUSION

For the reasons stated above, fees and expenses are awarded from the settlement fund as follows—Dubin: $87,562.41; Mehle: $787,910.05; Kelley Drye: $283,534.08; Vladeck: $250,000.00; and Lovell: $85,000.00.

**SO ORDERED.**

---

14. Although the Court has awarded Mehle and Kelley Drye a combined total of $29,900 for opposing Vladeck's and Lovell's fee application, this sum was for post-settlement activity and therefore not contemplated within the specific amount noticed to the class.