Abraham **SLOMOVICS,** Robert Wochinger, Philip Abalelli, Cyrus Sakhai, and Edward E. and Elizabeth W. McDaid, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**ALL FOR A DOLLAR, INC.,** et al., Defendants.

No. 93 CV 1352 (JG).

United States District Court, E.D. New York.

Dec. 5, 1995.

---

Joseph H. Weiss, New York City, for plaintiff.

Jeffrey C. Dannenberg, Spector, Scher, Feldman & Sternklar, New York City, Jonathan B. Alter, Schatz & Schatz Ribicoff & Kotkin, Hartford, CT, for defendants.

## MEMORANDUM AND ORDER

GLEESON, District Judge:

On March 29, 1993, Abraham Slomovics, together with other purchasers of securities of All For a Dollar, Inc. ("Dollar"), brought this class action against that company and three of its officers, V. Martin Effron, Roger A. Slate and Christopher Catjakis (the "Officers"), alleging that they had disseminated materially false and misleading statements and omissions concerning Dollar's business, finances, markets, and present and future prospects, in violation of the Security Exchange Act of 1934 and the Securities Act of 1933. The plaintiffs have moved, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed settlement of claims asserted in this securities fraud litigation. Plaintiffs have also moved for the award of attorney's fees and reimbursement of expenses. The terms of the settlement are set forth in the Stipulation and Agreement of Settlement between the parties ("the Settlement Agreement") dated May 15, 1995.

## BACKGROUND

Dollar operates discount variety stores that offer merchandise at the single price of $1.00. On May 5, 1992, the defendants, pur-

suant to a Prospectus and Registration Statement, sold 2,140,000 shares of Dollar common stock to the public at a price of $9.00 per share in an initial public offering ("IPO") underwritten by Ladenburg Thalmann & Co., Inc. ("Ladenburg"). The Officers individually sold 265,000 shares in the IPO.

The offering materials stressed certain "selling points" for Dollar but failed to mention other variables, such as the short maturity cycle for each of its stores, which, the plaintiffs allege, caused them to contain materially misleading statements or omissions of material information. Because of these alleged misstatements and omissions, according to the plaintiffs, analysts and purchasers of stock could not engage in realistic and meaningful long-term analysis of Dollar's prospects. As a result, analysts and the plaintiff purchasers of stock were led to believe that Dollar would have higher earnings per share than it announced for its fiscal 1993 earnings, which turned out to be $0.42–46 per share, instead of the expected $0.65.

The plaintiffs commenced the instant action, alleging that defendants knew, during the period from May 5, 1992 to March 25, 1993, that financial results and trends presented by them were not in fact indicative of Dollar's future performance and, in some instances, materially false. Since these alleged misstatements were contained in Dollar's publicly-issued prospectus and registration statements, quarterly and annual reports filed with the Securities and Exchange Commission, and other publicly-disseminated statements, the plaintiffs alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10(b)(5) promulgated under that act, as well as violations of Sections 11 and 15 of the Securities Act of 1933.

The case proceeded as follows:

In April and May 1993, the defendants made a motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. The court heard argument on May 21, 1993 and denied the motion on May 24, 1993. The defendants filed an Answer on June 17, 1993, denying all material allegations, and discovery continued through 1994.

On May 31, 1994, defendants filed a third-party complaint against Ladenburg and against defendants' prior counsel, Christy & Viener, alleging that if Dollar and the Officers were found liable, then such liability was based on the wrongdoing of Ladenburg and prior counsel.

On June 27, 1994 Dollar filed a bankruptcy petition in the United States Bankruptcy Court for the Western District of Massachusetts. As a result of the filing, the proceedings here with respect to Dollar were subject to an automatic stay pursuant to 11 U.S.C. § 362.

Counsel for plaintiffs and counsel for defendants engaged in intensive, arm's-length negotiations beginning in the summer of 1993 and lasting through early 1995 with respect to the claims against the defendants and the third-party defendants. These negotiations produced the proposed Settlement Agreement.

The parties were encouraged to reach this agreement by the increasing risk that there would be no recovery at trial. First, there were factors which raised doubts about whether liability on the part of the defendants could be established. For example, the plaintiffs could find no "smoking gun" which would establish the element of scienter at trial. Second, the financial condition of the defendants (except for third-party defendant Ladenburg) raised substantial doubt that plaintiffs would be able to fully recover even if liability was established. Third, any recovery after trial would not occur until far in the future, after a complete and lengthy judicial process, since the defendants and third-party defendants vigorously denied liability on all counts. Therefore, the plaintiffs' counsel concluded that it was in the best interest of the plaintiffs and the Class to settle the action for $827,500. The general terms pertaining to the Settlement Agreement were contained in a notice mailed to members of the class on May 19, 1995 and a summary notice which was published in the *Wall Street Journal* on May 23, 1995. No member of the Class has objected to the terms of the Settlement Agreement. The

parties have asked this Court to approve the Settlement Agreement and to award costs and attorney's fees out of the common settlement fund.

## THE PROPOSED SETTLEMENT

The following terms constitute the Settlement that the parties seek to have approved. The Officers will pay $564,706, Ladenburg will pay $27,500, and Dollar will pay $235,294 into a fund totalling $827,500 (the "Settlement Fund").[1] After reasonable attorney's fees and expenses are deducted from the fund, the remaining proceeds will be distributed *pro rata* to those members of the Class who submit timely and properly executed proof of claim forms and who do not exclude themselves.

## DISCUSSION

A proposed settlement of a class action must be approved by the district court. Fed.R.Civ.P. 23(e). In order to approve such a settlement, the court must determine that the proposed settlement is fair, reasonable and accurate. *Malchman v. Davis,* 706 F.2d 426, 433 (2d Cir.1983), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986). To do this, the court compares the terms of the settlement agreement with the likely outcome at trial and ensures that the conduct of the litigation and settlement negotiations was free of collusion and coercion. *Id.; see also In re Warner Communications Sec. Litig.,* 798 F.2d 35, 37 (2d Cir.1986) (The district court "has the fiduciary responsibility of insuring that the settlement is fair and not the product of collusion, and that class members' interests were represented adequately."). Factors relevant to the fairness of the proposed settlement include:

(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class

action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Malchman,* 706 F.2d at 433–34 (citing *Robertson v. National Basketball Ass'n,* 556 F.2d 682, 684 n. 1 (2d Cir.1977)); *see also City of Detroit v. Grinnell,* 495 F.2d 448, 463 (2d Cir.1974). For the reasons set forth below, and after considering the facts presented in the papers submitted, affidavits and hearings on the settlement held May 15 and September 22, 1995, the proposed settlement is approved as fair and reasonable. Attorney fees and costs are awarded to the extent set forth below.

The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class. *See In re Crazy Eddie Sec. Litig.,* 824 F.Supp. 320, 324 (E.D.N.Y.1993). A consideration of the risks of establishing liability and damages at trial also weighs in favor of finding this settlement to be fair. Crucial to plaintiffs' claim here is the allegation that the defendants had the requisite scienter in making the allegedly misleading statements or omissions. *In re AnnTaylor Stores Sec. Litig.,* No. 91–CV–7145, 1993 WL 183732 (S.D.N.Y. May 25, 1993) (noting the difficulty plaintiffs would face if they proceeded to trial and attempted to prove that defendants knew their forward-looking statements about future profits were false or misleading); *In re Avon Products Sec. Litig.,* No. 89–CV–6216, 1992 WL 349768 (S.D.N.Y. Nov. 6, 1992) (finding that since at trial plaintiffs would be required to establish that statements made "were not only false but were made either with the intention of misleading or with reckless disregard of their truth," a settlement before trial was fair and reasonable). Moreover, even if liability is established, plaintiffs will face the problems and complexities inherent in showing dam-

---

1. Payment will be in cash, more than two-thirds of which has already been deposited into an escrow account.

ages or proving market loss in this type of case.

The potential inability of plaintiffs to recover a greater amount from defendants because of their financial difficulties also suggests that a settlement in this case is fair and reasonable. Dollar has filed for bankruptcy, and actions against it are stayed. Since the plaintiffs' claims against Dollar were contingent when the company filed for bankruptcy, it is unlikely that plaintiffs would be able to collect a substantial judgment against the company. The Officers' net worth was severely lessened by Dollar's bankruptcy, decreasing the potential recovery from this source as well. Although there exists an insurance policy for Dollar's directors and officers, the insurance carrier has denied all of plaintiffs' allegations and, furthermore, has claimed that there may be no coverage here. The insurance policy might also be adjudicated part of Dollar's bankruptcy estate and thus be unavailable as a source of recovery for plaintiffs in this action.

The existence of sufficient discovery to allow the attorneys to intelligently evaluate the strengths and weaknesses of their case can support an application under Rule 23 to approve a class settlement. *See, e.g., Slade v. Shearson, Hammill & Co.,* 79 F.R.D. 309, 314 (S.D.N.Y.1978) (commenting favorably on extensiveness of discovery). However, full discovery is not a prerequisite for approval so long as the court is assured that the parties had sufficient information about the claim to intelligently evaluate the desirability of settlement. *Galdi Securities v. Propp* 87 F.R.D. 6, 9 (S.D.N.Y.1979) (approving settlement in the absence of any formal discovery because "there was substantial information available to plaintiff and its counsel for them to negotiate and enter into the proposed settlement" from public records). Here, discovery proceeded for over a year and one-half before the parties negotiated this settlement. Although discovery was not completed, I find that there was sufficient information made available to the parties to enable intelligent settlement negotiations to occur.

I credit the attorney's affidavit which states that the negotiations leading to this settlement agreement were conducted at arm's length. There is no reason to believe that there has been any collusion in this regard, and no one has suggested otherwise.

None of the class members has raised an objection to the proposed Settlement Agreement. The absence of such objections carries considerable weight in the determination of fairness. *Grinnell,* 495 F.2d at 462; *Weiss v. Drew Nat'l,* 465 F.Supp. 548, 551 (S.D.N.Y.1979) ("The absence of objectants may itself be taken as evidencing the fairness of the settlement.").

The above considerations warrant the approval of the Settlement Agreement. In addition, the parties' lawyers are experienced and knowledgeable in securities litigation. The proposed settlement is within the range of reasonableness in light of the best possible recovery and within the range of reasonableness in light of all the attendant risks of litigation.

### ATTORNEY FEES AND COSTS

 Counsel has requested attorney's fees from the Settlement Fund in order to compensate them for their efforts on behalf of the Class. Under the "equitable fund" doctrine, attorneys for the representative plaintiffs in a class action litigation may petition the court for compensation from any benefits which were achieved as a result of their efforts. *Boeing v. Van Gemert,* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). It is proper to compensate counsel based on a percentage of the common settlement fund in this type of case. *Blum v. Stenson,* 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1549 n. 16, 79 L.Ed.2d 891 (1984); *Dubin v. E.F. Hutton Group,* 878 F.Supp. 616 (S.D.N.Y.1995); *Crazy Eddie,* 824 F.Supp. 320; *In re Warner Communications,* 618 F.Supp. 735, 749 (S.D.N.Y.1985), aff'd 798 F.2d 35 (2d Cir.1986); *Court Awarded Attorney Fees,* 108 F.R.D. 237 (Oct. 8, 1985).[2]

---

**2.** The 1970s saw a proliferation of fee determinations according to the "lodestar" method introduced in *Lindy Bros. Builders v. American Radia-* *tor & Standard Sanitary,* 540 F.2d 102 (3d Cir. 1976). This method called for a multi-variable calculation of market rates for reasonable hours

There is no general rule as to what percentage of the common fund should be awarded as attorney fees. *Crazy Eddie,* 824 F.Supp. at 326. Many courts in this Circuit have awarded between 20% and 30%, with 25% perhaps being thought of as the "benchmark." *Court Awarded Attorney Fees,* 108 F.R.D. at 247 n. 32; *Crazy Eddie,* 824 F.Supp. at 326; *Mashburn v. Nat'l Healthcare,* 684 F.Supp. 679, 692 (M.D.Ala.1988) (conducting a review of fee award percentages in federal courts in various circuits). *Warner Communications,* 618 F.Supp. 735, stated that a court could reasonably award an amount between 20% and 50%, and the court in that case awarded an amount totalling less than 25%. *In re Union Carbide Sec. Litig.,* 724 F.Supp. 160 (S.D.N.Y.1989), stated that an amount between 15% and 30% could be reasonable and gave attorneys 27%. *Chatelain v. Prudential–Bache Sec.,* 805 F.Supp. 209, 215 (S.D.N.Y.1992), found that courts in the Second Circuit could reasonably grant awards from 15% to 50% and found that an amount totalling 28%—less than the 30% requested in the settlement agreement in that case—adequately compensated class counsel.

In this case, after examining the time records of counsel, considering the effort expended and the risk of recovery, I find that an award of 25% of the Settlement Fund is sufficient to compensate plaintiffs' counsel. Accordingly, $206,850 out of the Settlement Fund is awarded in attorneys' fees. The request for an award of $29,860.12 for costs, including expert fees, is granted. These expenses were necessarily incurred by plaintiffs' counsel in obtaining the beneficial recovery for the Class.

## ORDER

1. The terms of the proposed settlement of this action, as set forth in the Stipulation and Agreement of Settlement ("Settlement Agreement") dated May 15, 1995, are fair, reasonable and adequate and in the best interests of the class as defined in this Court's Order dated May 15, 1995 (the "Class"), and are hereby approved.

2. The plaintiffs, the defendants and third-party defendant Ladenburg are hereby ordered and directed to perform and consummate the settlement agreement described herein in accordance with the terms and conditions set forth in the Settlement Agreement.

3. The notification that has been provided to the members of the Class regarding the Settlement, the Notice of Pendency and Settlement of Class Action mailed to known members of the Class on May 19, 1994 and published in summary version on May 23, 1994 in the *Wall Street Journal* (the "Notice"), is the best notice practicable under the circumstances and is in compliance with Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process of law.

4. This Court hereby dismisses the class action Complaint filed in the instant action on March 29, 1993 and the Third–Party Complaint filed March 21, 1994 (the "Complaints") without costs. Any liability or claims against defendants or third-party defendant Ladenburg which are based on the facts alleged in the Complaints, and which were asserted in the Complaints against the defendants or the third-party defendant Ladenburg, or which could have been asserted in the Complaints by or on behalf of the plaintiffs or members of the Class who did not submit a request for exclusion from the Settlement, are hereby discharged.

5. The plaintiffs in this action and all those who purchased securities of All For a Dollar, Inc., between May 5, 1992 and March 25, 1993, inclusive, and their successors in interest (except those persons who submitted a proper and timely request for exclusion), on behalf of themselves, their heirs, execu-

worked, reduced or increased by a multiplier indicating the difficulty of the case and likelihood of recovery. · Nine years after the *Lindy* decision, the Third Circuit convened a task force to consider the continuing desirability of the "lodestar" method. The task force, citing numerous deficiencies in this method, concluded that the "lodestar" method be abandoned and recommended a return to a "percentage-of-recovery" method of determining fees. The task force did note, however, that future percentage-of-recovery awards should be made with an awareness to market rates for attorneys and actual hours spent on the case. *Court Awarded Attorney Fees,* 108 F.R.D. 237 (1985).

tors, administrators, officers, directors, successors, assigns, and any person they represent (the "Releasors"), are hereby deemed to have released and forever discharged (and the Court hereby approves the release and discharge) of each and every class, derivative, individual and other claim, right, cause of action and issue, under the laws of the United States or any other laws, known or unknown, which the Releasors or any of them, had, now has or may hereafter have, against the defendants All For A Dollar, Inc., V. Martin Effron, Roger A. Slate and Christopher Catjakis and third party defendant Ladenburg Thalmann, Inc., or any of their present or former subsidiaries, affiliates, predecessors, successors, assigns, officers, directors, employees, agents, attorneys insurers, heirs, executors or representatives which (i) has been or might have been asserted in the Complaints or in any other court or forum in connection with, arising out of or in any way related to (a) the purchase of common stock of All For A Dollar, Inc., by plaintiffs or any member of the Class during the period from May 5, 1992 to March 25, 1993; (b) any annual report, quarterly earnings reports, prospectus and registration statement, filings with the Securities Exchange Commission, or any other publicly disseminated document or any public statements or oral or written representation or omission of any type whatsoever, disseminated by or on behalf of All For A Dollar, or any of its subsidiaries or on behalf of any officer, director, employee, agent, attorney, or representative during the period from May 5, 1992 to March 25, 1993; (c) any acts, facts, transactions, occurrences, representations or omissions set forth or alleged in the Complaint, or (ii) arises from or is in any way related to the settlement of this action; provided however that this final order shall not release any party from its obligations under the Settlement Agreement.

6. This order does not dismiss or bar the actions brought by any and all of those persons who have filed proper and timely requests for exclusion from the Class pursuant to the Notice. Those persons who have requested to be excluded from the Class shall be excluded from the Class and from any benefits under this Settlement. Said persons may not pursue any remedies on behalf of those who are bound by the judgment herein against the defendants in connection with or relating in any way to the claims compromised in the Settlement.

7. All members of the Class who have not filed proper and timely requests for exclusion, and their respective agents, heirs, executors, administrators, successors and assigns, are hereby forever barred and enjoined from instituting or prosecuting, either directly or indirectly, against defendants as detailed in paragraph 5 of this order.

8. Each Class member, each of the defendants and Ladenburg has individually, completely, voluntarily, knowingly, unconditionally and forever released, remised, acquitted and discharged plaintiffs and plaintiffs' counsel from, and is permanently barred and enjoined from asserting, either directly or indirectly, any and all asserted or potential, separate, joint, individual claim, class claim, or other claims, actions, rights, causes of action, demands, liabilities, losses and damages of every kind and nature, anticipated or unanticipated, direct or indirect, fixed or contingent, known or unknown, under any law or regulation, or at equity, against plaintiffs and plaintiffs' counsel or any of them for, based upon or by reason of the institution, prosecution, assertion or resolution of the instant litigation or the released claims, except that nothing herein will release any claim arising out of a violation of the Settlement Agreement.

9. Pursuant to the Settlement Agreement, each of the defendants and Ladenburg has individually, completely, voluntarily, knowingly, unconditionally and forever released, remised, acquitted and discharged each other from, and is permanently barred and enjoined from asserting, either directly or indirectly, any and all asserted or potential, separate, joint, individual claim, class claim, or other claims, actions, rights, causes of action, demands, liabilities, losses and damages of every kind and nature, anticipated or unanticipated, direct or indirect, fixed or contingent, known or unknown, under any law or regulation, or at equity, against each other based upon or by reason of the institu-

tion, prosecution, assertion or resolution of the instant litigation or the released claims, except that nothing herein will release any claim arising out of a violation of the Settlement Agreement and nothing herein shall be deemed to release or affect any claims by any of the defendants or Ladenburg against Christy & Viener.

10. The Settlement Fund satisfies the requirements of Treasury Regulation § 1.468B–1(c) and is thus a qualified Settlement Fund.

11. This Court hereby awards counsel for plaintiffs and the Class attorneys' fees in the aggregate amount of $206,850.00 or 25% of the Settlement Fund, to be paid from the Settlement Fund.

12. This Court hereby awards counsel for the plaintiffs and the Class expenses incurred, including expert fees, in the aggregate amount of $29,860.12, to be paid from the Settlement Fund.

13. The award of attorneys' fees and expenses shall bear interest at the rate actually earned on the Settlement Fund.

14. The Court shall also retain continuing jurisdiction to effectuate the terms of settlement including the administration and distribution to the Class of settlement proceeds. Retention of jurisdiction shall not affect the finality of this judgment as to matters not reserved. It is expressly determined that there is no just reason for delay of the entry of judgment herein, and it is expressly directed that this order be entered pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

So Ordered.